## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MOHAMAD TLAIB, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PROCTER & GAMBLE COMPANY,<br><br>Defendant. | **CLASS ACTION COMPLAINT**<br>**JURY TRIAL DEMANDED**<br><br>Case No.: |

Plaintiff, Mohamad Tlaib, on behalf of himself and all others similarly situated, brings this class action against Defendant, Procter & Gamble Company ("Defendant" or "P&G"), and alleges on personal knowledge, investigation of counsel, and on information and belief as follows:

## <u>GENERAL ALLEGATIONS</u>

1.     P&G offers a variety of non-prescription drugs, including oral nasal decongestants, competing in a billion-dollar industry. Such products include the over-the-counter oral nasal decongestants "Vicks DayQuil Severe Cold & Flu" and "Vicks NyQuil Severe Cold & Flu" (collectively, "Products" or "Vicks PE Products"). These Products are phenylephrine hydrochloride ("PE") nasal decongestant and acetaminophen pain relief pills marketed as "MAX STRENGTH" relief for "Nasal Congestion," "Sinus Pressure," "Headache," "Fever," and "Minor Aches and Pains."

2.     The active decongestant ingredient in the Products is phenylephrine hydrochloride, which the weight of the reliable scientific evidence, as recently unanimously confirmed by a Food and Drug Administration ("FDA") committee, has determined to be no more effective as a nasal

1

decongestant than a placebo.

3.      When consumers purchase decongestants and pain relief pills, the strength of the ingredients are important purchasing considerations, especially for consumers seeking a "MAX STRENGTH" product.

4.      P&G takes advantage of this consumer preference for strong relief by prominently representing the alleged strength of the Vicks PE Products in the one place every consumer looks when purchasing a product—the front packaging.

5.      On each product package for "Vicks DayQuil Severe Cold & Flu," P&G touts in capitalized, green font set against a yellow background, at the top of the package, that it includes a decongestant providing "MAX STRENGTH" relief for "Nasal Congestion," and "Sinus Pressure" and also misleadingly touts "MAX STRENGTH" as to their other active ingredient, acetaminophen, as a pain reliever:



P&G's related "Vicks NyQuil Severe Cold & Flu" has a substantially similar package, with the "MAX STRENGTH" claim:



6.      By portraying the Vicks PE Products as "MAX STRENGTH" decongestants, P&G misleads consumers into believing their ingredients are suited to providing the strongest decongestant relief available over the counter.

7.      Despite marketing these Products as "MAX STRENGTH," P&G knew the active nasal decongestant ingredient, phenylephrine hydrochloride, was not as strong as other decongestants available without a prescription. Indeed, studies have shown phenylephrine

hydrochloride is no more effective than a placebo. Additionally, the Vicks PE Products do not even contain the maximum dosage of acetaminophen, and are thus not deserving of the "MAX STRENGTH" label and representation.

8.      Thus, the "MAX STRENGTH" packaging is misleading because nasal decongestants that are actually effective—without the "MAX STRENGTH" claim—are available. For example, both oxymetazoline and pseudoephedrine are both available without a prescription, and the former may be purchased over the counter.

Further, P&G knew that higher doses of acetaminophen exist on the market. The Court need look no further than the common manufacturing and marketing acetaminophen as "Regular Strength" for 325 mg and "Extra Strength" for 500 mg capsules, tablets, and gelcaps, taken, as with the Vicks PE Products, in dosages of two each.

9.      Despite this knowledge, P&G chose to mislead consumers through its promotion of the Products as "MAX STRENGTH" decongestants and pain relievers. However, none of the Products are "MAX STRENGTH." Consumers, including Plaintiff, lack the scientific knowledge necessary to determine whether the Products are "MAX STRENGTH" decongestants and/or pain relievers, or to ascertain the true quality or strength of these Products. For that reason, reasonable consumers must and do rely on manufacturers, including P&G, to be honest and transparent and to properly disclose on the packaging all material information regarding the Products and the dosage.

10.     Rather than being honest and transparent, P&G makes this "MAX STRENGTH" representation in a knowingly false, misleading, and deceptive manner.

11.     For all the reasons set forth herein, including but not limited to P&G's misrepresentations and omissions regarding its "MAX STRENGTH" claims, Plaintiff seeks relief

in this action individually, and as a class action on behalf of similarly situated purchasers of P&G's PE Products, for: (1) violation of state consumer protection laws and (2) unjust enrichment.

## THE PARTIES

12.     Plaintiff is a citizen of Illinois, residing in Cook County. He purchased the "Vicks "Vicks Nyquil Severe Cold and Flu" within the applicable statute of limitations period, most recently in November 2022 at a Walgreens near his home in Orland Hills, Illinois.

13.     P&G is a corporation with its headquarters and principal place of business in Ohio.

## JURISDICTION AND VENUE

16.     This Court has personal jurisdiction over P&G in this matter. The acts and omissions giving rise to this action occurred in the state of Illinois. P&G has been afforded due process because it has, at all times relevant to this matter, individually or through its agents, subsidiaries, officers and/or representatives, operated, conducted, engaged in and carried on a business venture in this state and/or maintained an office or agency in this state, and/or marketed, advertised, distributed and/or sold the Products in this state, committed a statutory violation within this state related to the allegations made herein, and caused injuries to Plaintiff and the putative class members, which arose out of the acts and omissions that occurred in the state of Illinois, during the relevant time period, at which time P&G was engaged in business activities in the state of Illinois.

17.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C.§ 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more putative class members, (ii) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one Plaintiff and P&G are citizens of different states.

18.     Pursuant to 28 U.S.C. § 1391(a), venue is proper because a substantial part of the events giving rise to the claims asserted occurred in this District. Venue is also proper pursuant to 28 U.S.C. § 1391(c) because P&G conducts substantial business in this District, has sufficient minimum contacts with this District, and otherwise purposely avails itself of the markets in this District, through the promotion, sale, and marketing of the Vicks PE Products in this District. Furthermore, Plaintiff resides in this District.

## FACTS COMMON TO ALL CLASS MEMBERS

20.     P&G is one of the largest drug manufacturing companies in the world. As such, P&G sells several OTC drugs, including the "Vicks" branded line of products.

21.     Phenylephrine hydrochloride is the active ingredient in P&G's Vicks PE Products for nasal decongestion. Acetaminophen is the active ingredient in the Vicks PE Products that are the subject of this action as a pain reliever. Both form the basis for P&G's "MAX STRENGTH" misrepresentations on the Products' packaging, and overall advertising and marketing campaign.

22.     At all relevant times, P&G has marketed the Products in a consistent and uniform manner nationwide.

23.     As alleged above, the Vicks PE Products represent that they are "MAX STRENGTH" relief for "Nasal Congestion," "Sinus Pressure," "Headache," "Fever," and "Minor Aches and Pains," with representations that predominately appear on the front label of the Products in capitalized, bold, green lettering on a yellow background that contrasts with the packaging. This instantly catches the eye of all reasonable consumers, including Plaintiff and class members.

24.     P&G repeats and expands on these "MAX STRENGTH" misrepresentations on its website. For "Vicks NyQuil Severe Cold & Flu," P&G asserts:

"**Just one dose** starts working fast to relieve 9 of your worst cold and flu symptoms. Vicks NyQuil SEVERE provides fast, powerful, **maximum strength 9-symptom**

> **relief** to treat coughing, sneezing, **stuffy nose**, **minor body pain**, **sinus congestion, sinus pressure**, sore throat, **headache**, and **fever**. Use when you need fast, nighttime relief for your ugliest, roughest, toughest cold symptoms so you can rest. **Nothing works faster**."

https://vicks.com/en-us/shop-products/nyquil/nyquil-severe-cold-and-flu-relief-liquid   (emphasis

added). As for "Vicks DayQuil Severe Cold & Flu," P&G's website makes near-identical claims

about its alleged "maximum strength" relief for decongestion, using "just one dose":

> When a cold comes on strong, knock it out with Vicks DayQuil SEVERE Cold & Flu LiquiCaps™. **Just one dose** starts working fast to relieve 9 of your worst cold and flu symptoms. Vicks DayQuil SEVERE provides fast, powerful, **maximum strength 9-symptom relief** to treat coughing, stuffy nose, **minor body pain**, chest congestion**, sinus congestion, sinus pressure**, sore throat, **headache**, and **fever**. Use when you need fast, non-drowsy daytime relief for your roughest, toughest cold symptoms so you can get on with your day.

https://vicks.com/en-us/shop-products/dayquil/dayquil-severe-cough-cold-flu-daytime-relief-

liquicaps-16ct (emphasis added).

25.    A reasonable consumer would understand that "MAX STRENGTH" relief for

"Nasal Congestion" means the Vicks PE Products contained the strongest  nasal decongestant

available on the over-the-counter market, as well as the strongest dose of acetaminophen for

"minor body pain," "headache," and "fever."

26.    All reasonable consumers, including Plaintiff, read and relied on P&G's "MAX

STRENGTH" representations when purchasing the Products. Indeed, when purchasing

pharmaceuticals, especially those promising to be "MAX STRENGTH," consumers often look for

a product with the strongest active ingredients and are willing to pay a premium for them.

27.    P&G's "MAX STRENGTH" representation was material to Plaintiff's and class

members' decision to purchase the Vicks PE Products. Had consumers, such as Plaintiff, known

the Vicks PE Products were not "MAX STRENGTH" relief for "Nasal Congestion," "Sinus

Pressure," "Headache," "Fever," and "Minor Aches and Pains," they would not have purchased

7

them or would have paid less. Indeed, the only reason consumers purchase pharmaceuticals is for their advertised therapeutic effect. They want relief from their cold symptoms, and in this case, the Plaintiff and the Class members purchased "MAX STRENGTH" Products based on P&G's false representations and omissions.

28.     P&G's marketing efforts are made in order to—and do in fact—induce consumers to purchase the Vicks PE Products at a premium because consumers believe they are getting "MAX STRENGTH" decongestants. This deceives consumers because they are not informed that phenylephrine hydrochloride nasal decongestants are inferior to other, available decongestants.

29.     P&G, however, has at all relevant times been well aware that its PE Products are not "MAX STRENGTH" nasal decongestants, and that other, stronger decongestants are available.

30.     Starting in December 2007, the FDA convened a Nonprescription Drugs Advisory Committee ("NDAC") meeting to address questions about phenylephrine's purported effectiveness. On September 11 and 12, 2023, an advisory panel of the FDA met again to present its findings on scientific literature presented as to the effectiveness of phenylephrine hydrochloride (referred to by the FDA as "PE") as an oral nasal decongestant. The panel found: "[W]e have now come to the initial conclusion that orally administered PE is not effective as a nasal decongestant at the monographed dosage (10 mg of PE hydrochloride every 4 hours) as well as at doses up to 40 mg (dosed every 4 hours)."

31.     In 2015, in a well-publicized fashion, further independent research was submitted to the FDA requesting the PE be reclassified as not effective as a nasal decongestant.

32.     As a leading manufacturer of phenylephrine hydrochloride oral nasal decongestants, P&G knew or should have known of the same scientific literature reviewed by the FDA. Nonetheless, it represents that the Vicks PE Products are "MAX STRENGTH." This is

8

particularly misleading because there exist other non-prescription nasal decongestants, which contain effective active ingredients, such as pseudoephedrine, which are not marketed as "MAX STRENGTH" relief for "Nasal Congestion" and "Sinus Pressure." Accordingly, consumers are induced into purchasing the Vicks PE Products, based on the "MAX STRENGTH" representation, when comparing it to competing nasal decongestants.

Nonetheless, because the PE Products contain phenylephrine as the only active oral nasal decongestant ingredient, for that reason alone they are not "MAX STRENGTH" relief for "Nasal Congestion" and "Sinus Pressure." Phenylephrine is not the "MAX STRENGTH" nasal decongestant allowable over-the-counter. Even Defendant offers decongestants with higher strength active decongestant ingredients.

33.    Further, the "MAX STRENGTH" relief representation is misleading for another reason. As the back label of the "Vicks DayQuil Severe Cold & Flu" package discloses, the only active ingredient for the dosage of the pain reliever/fever reducer agent, acetaminophen, is only 325 mg per LiquiCap, well below the maximum dosage offered by other pain relief drugs available:



34.      P&G repeats the same dosage-related misrepresentations on the package for "Vicks DayQuil Severe Cold & Flu." Despite claiming to provide "MAX STRENGTH" relief for "Headache," "Fever," and "Minor Aches and Pains" on the front of the package, , the back of the package shows the only pain relief ingredient is 325 mg of acetaminophen per LiquiCap, which is well below the dosage available from other over-the-counter products:



35.      At any rate, because the Vicks PE Products contain phenylephrine as the only active oral nasal decongestant ingredient, they are not "MAX STRENGTH" relief for "Nasal Congestion" and "Sinus Pressure." Phenylephrine is not the "MAX STRENGTH" nasal decongestant available over the counter.

36.      P&G intended for Plaintiff and class members to be deceived or mislead by its

misrepresentations and omissions. Indeed, label space is limited, so manufacturers only place the most pertinent information on the front label. Defendant specifically labeled and marketed the Vicks PE Products as "MAX STRENGTH" relief for "Nasal Congestion" and "Sinus Pressure" when other oral nasal decongestants were not marketed in a similar fashion.

37.    P&G's deceptive and misleading practices proximately caused harm to Plaintiff and the Classes.

38.    Plaintiff and class members would not have purchased the Vicks PE Products or would have paid less for them, had they known the truth about the mislabeled and falsely advertised products. Indeed, other stronger nasal decongestants and higher acetaminophen doses are available.

## PLAINTIFF'S FACTUAL ALLEGATIONS

39.    Plaintiff relied on the "MAX STRENGTH" label in deciding to purchase what he believed to be the strongest nasal decongestant. Had Plaintiff known that phenylephrine—the only active oral nasal decongestant ingredient in the Vicks PE Products is not the "MAX STRENGTH" nasal decongestant allowable over the counter, he would not have purchased them.  Further, had he known the acetaminophen in Vicks PE Products was not the maximum dosage available, he would not have purchased it.

40.    Plaintiff is a citizen of Illinois, residing in Cook County. Throughout the relevant period, Plaintiff purchased the Product at issue in this lawsuit and was exposed to, and reasonably relied upon, P&G's "MAX STRENGTH" representations. Specifically, Plaintiff purchased  the "Vicks NyQuil Severe Cold and Flu" within the applicable statute of limitations period, most recently in November of 2022 from a Walgreens located at 8400 171st St, Tinley Park, Illinois 60487. At the time of purchase, Plaintiff reviewed the Product packaging, including the front-label

11

representations, and reasonably believed from these representations that the Products were "MAX STRENGTH." In reasonable reliance on these representations, Plaintiff paid an increased cost for the Products, which were worth less than represented because the statements were not true and were highly misleading. The "MAX STRENGTH" representation on the Products' packaging, was part of the basis of the bargain in that Plaintiff attributed value to those representations and Plaintiff would not have purchased the Products, or would not have purchased them on the same terms, if he knew the "MAX STRENGTH" representations were untrue and/or misleading. Plaintiff paid a price premium for empty promises that P&G did not keep. Had Plaintiff been aware that the "MAX STRENGTH" representations made by P&G on the Products was untrue, he would have paid less for the Products, or would not have purchased them at all.

## **FED. R. CIV. P. 9(B) ALLEGATIONS**

41.     P&G made material misrepresentations and/or omissions of fact in its labeling and marketing of the Vicks PE Products by representing that they are "MAX STRENGTH" decongestant and pain relief products.

42.     P&G's alleged conduct was and continues to be fraudulent because it has the effect of deceiving consumers into believing that the Vicks PE Products are "MAX STRENGTH" oral nasal decongestant products. P&G omitted from Plaintiff and class members that the Vicks PE Products are not "MAX STRENGTH" oral nasal decongestant products because other decongestant products exist in the market that are stronger as decongestants. P&G knew or should have known this information is material to all reasonable consumers and impacts consumers' purchasing decisions. Yet, P&G has and continues to represent that the Vicks PE Products are "MAX STRENGTH" oral nasal decongestant products when they are not, and has omitted from the Vicks PE Products' packaging the fact that there are other non-prescription products that are

stronger decongestants. So too with respect to P&G's misrepresentations that the Vicks PE Products are "MAX STRENGTH" with respect to pain relief, even though their acetaminophen content is only regular strength.

43.    P&G made material misrepresentations and/or omissions detailed herein, including that the Vicks PE Products are "MAX STRENGTH" oral nasal decongestant and pain reliever products, continuously throughout the applicable class period(s).

44.    P&G's material misrepresentations and omissions, that the Vicks PE Products are "MAX STRENGTH" oral nasal decongestant and pain reliever products, were located on the front label of the Vicks PE Products in capitalized bold, green lettering on a yellow background that contrasts with the packaging, which instantly catches the eye of all reasonable consumers, including Plaintiff and Class members, at the point of sale in every transaction. The PE Products are sold in brick-and-mortar stores and online stores in Illinois and nationwide.

45.    P&G made written misrepresentations of fact on the front label of the Vicks PE Products that the Vicks PE Products were "MAX STRENGTH" oral nasal decongestant products, even though other stronger decongestant products are available over the counter. As such, P&G's "MAX STRENGTH" representations are false and misleading. Moreover, P&G omitted from the Vicks PE Products' labeling the fact that there are other non-prescription products available that are stronger decongestants and pain relievers. And as alleged in detail throughout this Complaint, Plaintiff and Class members read and relied on P&G's "MAX STRENGTH" representations and omissions before purchasing the Vicks PE Products.

46.    P&G misrepresented its PE Products as being "MAX STRENGTH" decongestant products and omitted from the Vicks PE Products' labeling the fact that there are other, non-prescription products available that are stronger decongestants, for the purpose of inducing

Plaintiff and Class members to purchase the inferior phenylephrine hydrochloride and acetaminophen products at a price premium. As such, P&G profited by selling the misrepresented products to at least thousands of consumers throughout the nation.

## CLASS ACTION ALLEGATIONS

47.     Plaintiff brings this action on behalf of himself and the following "Classes" pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and/or (b)(3). Specifically, the Classes are defined as:

> **Nationwide Class**: All persons in the United States who purchased the Vicks PE Products in the United States for personal use and not for resale during the applicable statute of limitations period.

> **Multi-State Consumer Protection Class:**  All persons who purchased the PE Products in the State of Illinois or any state with similar laws[1] for personal use and not for resale during the applicable statute of limitations period.

> **Illinois Subclass**: All persons in the State of Illinois who purchased the Vicks PE Products in the State of Illinois for personal use and not for resale during the applicable statute of limitations period.

48.     Excluded from the Classes are (a) any person who purchased the Vicks PE Products for  resale and not for personal or household use, (b) any person who signed a release of any P&G in exchange for consideration, (c) any officers, directors or employees, or immediate family members of the officers, directors or employees, of any P&G or any entity in which a P&G has a controlling interest, (d) any legal counsel or employee of legal counsel for P&G, and € the presiding Judge in this lawsuit, as well as the Judge's staff and their immediate family members.

---

[1] While discovery may alter the following, Plaintiff assert that the other states with similar consumer fraud laws under the facts of this case include, but are not limited to: California (Cal. Bus. & Prof. Code § 17200, et seq.); Florida (Fla. Stat. §§ 501.201, et seq.); Illinois (815 ICLS §§ 505/1, et seq.); Massachusetts (Mass. Gen. Laws Ch. 93A, et seq.); Michigan (Mich. Comp. Laws §§ 445.901, et seq.); Minnesota (Minn. Stat. §§ 325F.67, et seq.); New Jersey (N.J. Stat. §§ 56:8-1, et seq.); New York (N.Y. Gen. Bus. Law §§ 349, et seq.); Washington (Wash. Rev. Code §§ 19.86.010, et seq.). *See Mullins v. Direct Digital, LLC*, No. 13-cv-1829, 2014 WL 5461903 (N.D. Ill. Sept. 30, 2014), aff'd, 795 F.3d 654 (7th Cir. 2015).

49.     Plaintiff reserves the right to amend the definition of the Classes if discovery or further investigation reveals that the Classes should be expanded or otherwise modified.

50.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** Class members are so numerous and geographically dispersed that joinder of all class members is impracticable. While the exact number of class members remains unknown at this time, upon information and belief, there are thousands, if not hundreds of thousands, of putative class members.

51.     **Predominance of Common Questions of Law and Fact – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all class members and predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are limited to, the following:

a.  Whether P&G made the "MAX STRENGTH" representations;

b.  Whether P&G promoted the Vicks PE Products with false and misleading statements of fact and material omissions;

c.  Whether P&G's "MAX STRENGTH" representations are deceptive, unfair, or misleading to the reasonable consumer;

d.  Whether P&G's actions and/or omissions violate applicable laws;

e.  Whether Plaintiff and putative members of the Classes have suffered loss of monies or property or other value as a result of P&G's acts, omissions, or misrepresentations of material facts;

f.  Whether P&G was unjustly enriched at the expense of Plaintiff and members of the putative Classes in connection with the Vicks PE Products;

g.  Whether Plaintiff and members of the putative Classes are entitled to monetary damages or statutory damages, and, if so, the nature of such relief; and

h. Whether Plaintiff and members of the putative Classes are entitled to equitable, declaratory, or injunctive relief and, if so, the nature of such relief.

52. **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of those of the absent class members in that Plaintiff and the class members each purchased and used the Vicks PE Products and each sustained damages arising from P&G's wrongful conduct, as alleged more fully herein. Plaintiff shares the aforementioned facts and legal claims or questions with putative members of the Classes, and Plaintiff and all members of the putative Classes have been similarly affected by P&G's common course of conduct alleged herein. Plaintiff and all members of the putative Classes sustained monetary and economic injuries including, but not limited to, ascertainable loss arising out of P&G's false and deceptive "MAX STRENGTH" representations about the Vicks PE Products, as alleged herein.

53. **Adequacy – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff will fairly and adequately represent and protect the interests of the members of the putative Classes. Plaintiff has retained counsel with substantial experience in handling complex class action litigation, including complex questions that arise in this type of consumer protection litigation. Further, Plaintiff and her counsel are committed to the vigorous prosecution of this action. Plaintiff does not have any conflicts of interest or interests adverse to those of putative Classes.

54. **Insufficiency of Separate Actions – Federal Rule of Civil Procedure 23(b)(1).** Absent a class action, Plaintiff and members of the Classes will continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated consumers,

substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for P&G. Accordingly, the proposed Classes satisfy the requirements of Fed. R. Civ. P. 23(b)(1).

55.    **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure  23(b)(2).** P&G has acted or refused to act on grounds generally applicable to Plaintiff and all Members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the members of the Classes as a whole.

56.    **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available methods for the fair and efficient adjudication of the present controversy for at least the following reasons:

a.    The damages suffered by each individual member of the putative Classes do not justify the burden and expense of individual prosecution of the complex and extensive litigation necessitated by P&G's conduct;

b.    Even if individual members of the Classes had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed;

c.    The claims presented in this case predominate over any questions of law or fact affecting individual members of the Classes;

d.    Individual joinder of all members of the Classes is impracticable;

e.    Absent a class, Plaintiff and members of the putative Classes will continue to suffer harm as a result of P&G's unlawful conduct; and

f.    This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiff and members of the

putative Classes can seek redress for the harm caused by P&G.

g.   In the alternative, the Classes may be certified for the following reasons:

(1) The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudication with respect to individual members of the Classes, which would establish incompatible standards of conduct for P&G;

(2) Adjudications of claims of the individual members of the Classes against P&G would, as a practical matter, be dispositive of the interests of other members of the putative Classes who are not parties to the adjudication and may substantially impair or impede the ability of other putative class members to protect their interests; and

(3) P&G has acted or refused to act on grounds generally applicable to the members of the putative Classes, thereby making appropriate final and injunctive relief with respect to the putative Classes as a whole.

## CLAIMS FOR RELIEF

### COUNT I
### VIOLATION OF THE ILLINOIS CONSUMER FRAUD
### AND DECEPTIVE BUSINESS PRACTICES ACT
#### (By Plaintiff on Behalf of the Illinois Subclass)

57.     Plaintiff incorporates paragraphs 1-56 as if fully set forth herein.

58.     Plaintiff brings this action on behalf of himself and the Illinois Subclass.

59.     In Illinois, the "Consumer Fraud and Deceptive Business Practices Act" 815 Ill. Comp. Stat. 505/1, et seq., prohibits "unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any

18

material fact, with intent that others rely upon the concealment, suppression or omission of such material fact or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act' . . . ."

60.     Plaintiff and the Illinois Sub-Class members were injured by P&G's deceptive misrepresentations, concealments and omissions and these misrepresentations, concealments and omissions were material and deceived Plaintiff and the Illinois Subclass. Because Plaintiff and the Illinois Subclass members relied on P&G's misrepresentations, concealments and omissions when purchasing the Products, they were injured at the time of purchase.

61.     P&G does business in Illinois, sells and distributes the Products in Illinois, and engaged in deceptive acts and practices in connection with the sale of the Products in Illinois and elsewhere in the United States.

62.     The Products purchased by Plaintiff and the Illinois Subclass members were "consumer items" as that term is defined under the Illinois Consumer Fraud Act.

63.     P&G engaged in unfair and deceptive acts in violation of 815 Ill. Comp. Stat. 505/2 when it misrepresented and deceptively concealed, suppressed and/or omitted the material information known to P&G as set forth above concerning its Products, which has caused damage and injury to Plaintiff and the Illinois Subclass Members. Plaintiff and the Illinois Subclass members were injured by P&G's unfair and deceptive acts at the time of purchasing the Products.

64.     P&G's marking of Vicks PE products violates this prohibition by deceiving consumers into believing Vicks PE is a "MAX STRENGTH" decongestant or pain reliever/fever reducer.

65.     P&G engaged in fraudulent and/or deceptive conduct, which creates a likelihood of confusion or of misunderstanding in violation of the Act.

19

66.     P&G engaged in misleading and deceptive advertising that represented that the Vicks PE products were MAX STRENGTH." P&G chose to package and market the products in this way to impact consumer choices and gain market dominance, as it knew or should have known that all consumers who purchased the products would be impacted by its omissions and would reasonably believe P&G's false and misleading "MAX STRENGTH" representations and omissions.

67.     P&G's deceptive acts occurred in a course of conduct involving trade and commerce in Illinois and throughout the United States.

68.     P&G intended Plaintiff and the Illinois Subclass members to rely on its deceptive acts when purchasing the Products.

69.     P&G's deceptive acts proximately caused actual injury and damage to Plaintiff and the Illinois Subclass members at the time of purchase.

70.     Plaintiff and the Illinois Subclass members would not have purchased, or would have paid less for, the Products but for P&G's material misrepresentations as described in this Complaint.

## COUNT II
## VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
### (By Plaintiff on Behalf of the Illinois Subclass)

71.     Plaintiff incorporates paragraphs 1-56 as if fully set forth herein.

72.     Plaintiff brings this action on behalf of himself and the Illinois Subclass.

73.     The Illinois Deceptive Trade Practices Act ("UDTPA"), 815 Ill. Comp. Stat. 510/2, et seq., prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with

intent that others rely upon the concealment, suppression or omission of such material fact."

74.    815 ILCS 510/2 provides in pertinent part that a "person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation," the person does any of the following: "(5) represents that goods or services have . . . uses, benefits or quantities that they do not have . . .; (7) represents that goods or services are of a particular standard, quality, or grade or that goods are a particular style or model, if they are of another; . . . [or] (12) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding."

75.    P&G's marking of Vicks PE products violates this prohibition by deceiving consumers into believing Vicks PE is a "MAX STRENGTH" decongestant or pain reliever/fever reducer.

76.    P&G engaged in fraudulent and/or deceptive conduct, which creates a likelihood of confusion or of misunderstanding in violation of the Act.

77.    P&G engaged in misleading and deceptive advertising that represented that the Vicks PE products were MAX STRENGTH." P&G chose to package and market the products in this way to impact consumer choices and gain market dominance, as it knew or should have known that all consumers who purchased the products would be impacted by its omissions and would reasonably believe P&G's false and misleading "MAX STRENGTH" representations and omissions.

78.    P&G intended that Plaintiff and each of the other Illinois Subclass members would reasonably rely upon the material omissions concerning the true nature of the Vicks PE products.

79.    P&G's concealment, omissions, and other deceptive conduct were likely to deceive and cause misunderstanding and/or in fact caused Plaintiff and each of the other Illinois Subclass members to be deceived about the true nature of the products.

80.     P&G's deceptive acts occurred in a course of conduct involving trade and commerce in Illinois and throughout the United States.

81.     P&G's deceptive acts proximately caused actual injury and damage to Plaintiff and the Illinois Subclass Members at the time of purchase.

82.     Plaintiff and the Illinois Subclass Members would not have purchased, or would have paid less for, the Products but for P&G's material misrepresentations as described in this Complaint.

83.     P&G intended Plaintiff and the Illinois Subclass members to rely on its deceptive acts when purchasing the Products.

## COUNT III
### VIOLATION OF STATE CONSUMER PROTECTION ACTS
### (By Plaintiff on Behalf of the Multi-State Consumer Protection Class )

84.     Plaintiff incorporates paragraphs 1-56 as if fully set forth herein.

85.     Plaintiff brings this cause of action on behalf of himself and the Multi-State Consumer Protection Class.

86.     Plaintiff and Multi-State Consumer Protection Class members have been injured as a result of P&G's violations of the state consumer protection statutes listed above in paragraph 47 and footnote 1, which also provide a basis for redress to Plaintiff and Multi-State Consumer Class Members based on P&G's fraudulent, deceptive, unfair and unconscionable acts, practices and conduct.

87.     P&G's conduct as alleged herein violates the consumer protection, unfair trade practices, and deceptive acts laws of each of the jurisdictions encompassing the Multi-State Consumer Class.

88.     P&G violated the Multi-State Consumer Class states' consumer protection, unfair

trade practices, and deceptive acts laws through its misleading and deceptive advertising that represented that the Vicks PE products were "MAX STRENGTH." J&J chose to package and market the Products in this way to impact consumer choices and gain market dominance, as it knew or should have known that all consumers who purchased the products would be impacted by its omissions and would reasonably believe P&G's false and misleading "MAX STRENGTH" representations and omissions.

89.     P&G's misrepresentations were material to Plaintiff and Multi-State Consumer Class members' decision to purchase the Products or pay a premium for the Products.

90.     P&G made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

91.     As a result of P&G's violations of the aforementioned states' unfair and deceptive practices laws, Plaintiff and Multi-State Consumer Class members paid a premium for the Products.

92.     As a result of P&G's violations, P&G has been unjustly enriched.

93.     Pursuant to the alleged consumer protection, unfair trade practices, and deceptive acts laws, Plaintiff and Multi-State Consumer Class members are entitled to recover compensatory damages, restitution, punitive, and special damages, including but not limited to statutory or treble damages, reasonable attorneys' fees and costs, and other injunctive or declaratory relief as deemed appropriate or permitted pursuant to the relevant law.

**COUNT IV**
**UNJUST ENRICHMENT**
**(By Plaintiff, on Behalf of the Nationwide Class, or in the Alternative, the Illinois Subclass)**

94.     Plaintiff realleges paragraphs 1-56 above as if fully set forth herein.

95.     Plaintiff brings this cause of action on behalf of himself, the Nationwide Class, and/or the Illinois Subclass against P&G. It is alleged in the alternative to the extent there is no

adequate remedy at law.

96.     Plaintiff and the putative Class members conferred a benefit on P&G when they purchased the Vicks PE Products. By its wrongful acts and omissions described herein, including selling the Vicks PE Products containing the "MAX STRENGTH" representations, which did not conform to the promises or affirmations of fact made on the label, P&G was unjustly enriched at the expense of Plaintiff and the putative class members.

97.     Plaintiff's detriment and P&G's enrichment were related to and flowed from the wrongful conduct challenged in this Complaint.

98.     P&G has profited from its unlawful, unfair, misleading, and deceptive practices at the expense of Plaintiff and the putative class members under circumstances in which it would be unjust for P&G to be permitted to retain the benefit. It would be inequitable for P&G to retain the profits, benefits, and other compensation obtained from their wrongful conduct as described herein in connection with selling the Vicks PE Products.

99.     P&G has been unjustly enriched in retaining the revenues derived from class members' purchases of the Vicks PE Products, which retention of such revenues under these circumstances is unjust and inequitable because P&G marketed, advertised, distributed, and sold the Vicks PE Products, and P&G misrepresented the nature of the products, misrepresented their benefits and attributes, and knowingly marketed and promoted the Vicks PE Products with "MAX STRENGTH" representations, which caused injuries to Plaintiff and the Classes because they would not have purchased the Vicks PE Products based on the same representations if the true facts concerning the Vicks PE Products had been known.

100.    Plaintiff and the putative class members have been damaged as a direct and proximate result of P&G's unjust enrichment because they would not have purchased the Vicks

PE Products on the same terms or for the same price had they known the true nature of the Vicks PE Products and the misstatements regarding the strength of the Vicks PE Products' active ingredients.

101.    P&G either knew or should have known that payments rendered by Plaintiff and the putative class members were given and received with the expectation that the "MAX STRENGTH" representations made by P&G in advertising, on P&G's website, and on the Vicks PE Products' labels and packaging were true. It is inequitable for P&G to retain the benefit of payments under these circumstances because the "MAX STRENGTH" representations are not true.

102.    Plaintiff and the putative class members are entitled to recover from P&G all amounts wrongfully collected and improperly retained by P&G.

103.    As a direct result of P&G's wrongful conduct and unjust enrichment, Plaintiff and the putative class members are entitled to restitution of, disgorgement of, and/or imposition of a constructive trust upon all profits, benefits, and other compensation obtained by P&G for its inequitable and unlawful conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated members of the Classes, prays for relief and judgment, including entry of an order:

A.    Declaring that this action is properly maintained as a class action, certifying the proposed Classes, appointing as Class Representative and appointing Plaintiff's counsel as Class Counsel;

B.    Directing that P&G bear the costs of any notice sent to the Classes;

C.    Declaring that P&G must disgorge, for the benefit of the Classes, all or

part of the ill-gotten profits they received from the sale of the Vicks PE Products, or order P&G to make full restitution to Plaintiff and the members of the Classes;

D.      Awarding restitution and other appropriate equitable relief;

E.      Granting an injunction against P&G to enjoin it from conducting its business through the unlawful, unfair, and fraudulent acts or practices set forth herein;

F.      Granting an Order requiring P&G to fully and appropriately recall the Products and/or to remove the claims on its website and elsewhere, including "MAX STRENGTH" representations regarding the Vicks PE Products;

G.      Ordering a jury trial and damages according to proof;

H.      Awarding Plaintiff and members of the Classes compensatory and punitive damages, or statutory damages, as provided by the applicable state consumer protection statutes invoked above;

I.      Enjoining P&G from continuing to engage in the unlawful and unfair business acts and practices as alleged herein;

J.      Awarding attorneys' fees and litigation costs to Plaintiff and members of the Class(es);

K.      Awarding civil penalties, prejudgment interest, and punitive damages as permitted by law; and

L.      Ordering such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury of all claims in this Complaint so triable.

Dated: September 18, 2023                Respectfully submitted,


By: */s/ Gary Klinger*

Gary M. Klinger
**MILBERG COLEMAN BRYSON PHILLIPS
GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (866) 252-0878
Email: gklinger@milberg.com

Nick Suciu III
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Telephone: (313) 303-3472
Email: nsuciu@milberg.com

Jeff Ostrow
Jonathan M. Streisfeld
Kristen Lake Cardoso
Daniel Tropin*
**KOPELOWITZ OSTROW P.A.**
One West Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Telephone: (954) 525-4100
Email:  ostrow@kolawyers.com
           streisfeld@kolawyers.com
           cardoso@kolawyers.com
           tropin@kolawyers.com

Melissa S. Weiner
Ryan J. Gott
**PEARSON WARSHAW, LLP**
328 Barry Avenue South, Suite 200
Wayzata, Minnesota 55391
Telephone: (612) 389-0600
Email: mweiner@pwfirm.com
           rgott@pwfirm.com

Erin Ruben
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**
900 W. Morgan Street
Raleigh, NC 27603
Telephone: (919) 600-5000
Email: eruben@milberg.com

J. Hunter Bryson
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
405 E 50th Street
New York, NY 10022
Telephone: (630) 796-0903
Email: hbryson@milberg.com

Karl Amelchenko*
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
900 W. Morgan Street
Raleigh, NC 27603
Telephone: (919) 600-5000
Email: kamelchenko@milberg.com

Jimmy Mintz*
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
201 Sevilla Ave., 2nd Floor
Coral Gables, FL 33134
Telephone: (786) 876-8200
Email: jmintz@milberg.com

*Attorneys for Plaintiff*

*\*Applications for admission forthcoming*

28